WENTWORTH, Judge.
Appellants seek review of an administrative order by which the Department of Environmental Regulation (DER) denied an application for a construction permit. Finding the doctrine of administrative res judicata to be applicable, DER determined that there were no disputed issues of material fact and declined to provide appellants with a formal section 120.57(1), Florida Statutes, hearing. We conclude that DER did not err in this regard, and we affirm the order appealed.
Appellants applied to DER for a permit to construct a 36 foot octagonal platform, and a 92 foot walkway, supported by pilings in waters over submerged land abutting the intracoastal waterway at Jupiter Island Cove. Noting that the proposed project would be within the Loxahatchee River-Lake Worth Creek Aquatic Preserve, an outstanding Florida water, DER issued a notice of intent to deny the permit application. In its notice of intent DER indicated that the proposed project would result in the shading of seagrasses to the detriment of the detrital food web, significantly interfere with the conservation of fish and wildlife, and adversely impact water quality standards and marine habitats and soils.[1] Appellants did not seek an ad *1034 ministrative hearing and DER thus entered a final order adopting the findings and conclusions recited in the notice of intent, and denying the permit application.
After modifying the platform design and slightly extending the proposed walkway appellants submitted another application for a permit. Drawings which accompanied the application suggest that the redesigned platform would not be located directly above any existing seagrass. DER issued a notice of intent to deny this new application, stating that the platform and walkway “will be located over and near marine bottom capable of supporting seag-rasses.” The notice of intent reiterated DER’s earlier position, and advised that should appellants seek an administrative hearing “the petition should address the res judicata aspects of this denial.” Appellants petitioned for a hearing, asserting that the proposed modifications preclude application of the res judicata doctrine, and alleging that disputed issues of material fact exist regarding the impact of the project on water quality and marine habitat. DER declined to grant a formal section 120.57(1) fact-finding hearing, offering an informal section 120.57(2) hearing instead, and ultimately entered a final order which denied a permit for the modified project, applying the doctrine of res judica-ta..[2]
Appellants argue that res judicata should not apply because they did not receive an administrative hearing on their initial permit application. A fair opportunity to be heard is generally an element of the procedural due process necessary for the applicability of the doctrine of administrative res judicata. See Coral Reef Nurseries Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982). But it is the opportunity to be heard, rather than an actual hearing, which is critical. Cf., Litt v. Jarson, 97 So.2d 46 (Fla.Sd DCA 1957). In the present case appellants received formal notice that they might obtain a hearing upon their initial permit application by filing a timely request. Appellants were thereby afforded a fair opportunity for a hearing, and the conclusive effect of DER’s initial adjudication is thus not vitiated by appellants’ decision not to request a hearing.[3]
Appellants also argue that res judi-cata should not apply because the second permit application was based upon a modified platform design. In its final order DER acknowledged that the proposed platform was no longer located directly above *1035 existing seagrass, but noted that it was nevertheless only two feet from the grassbeds. Indicating that the initial permit denial was also predicated upon affected water quality criteria, DER determined that the design modification “is not significant, and the circumstances are otherwise unchanged.” We conclude that in the circumstances presented DER was not pre-eluded from applying the doctrine of res judicata merely because of minor design modifications to the proposed platform, inasmuch as the affected water quality standards, and conservation interests which served as an independent basis for the initial permit denial, were considered as impacted by the project in its entirety.[4]
The order appealed is affirmed.

*1036

Graphic representations purporting to indicate the location of existing seagrasses in relation to the proposed structures were also prepared as part of an environmental survey and report made after DER issued a notice of intent to deny appellants’ first permit application. While the record suggests that a drawing purporting to show the existence of seagrasses in relation to the second proposed structure may have been submitted to DER with the second application, there is no indication that the report, or a drawing showing seagrasses in relation to the first proposed structure, was ever so submitted. In any event, these drawings do not negate the applicability of the doctrine of res judicata, inasmuch as the initial permit denial was not based solely on the direct shading of existing seagrass-es, but rather was also predicated upon water *1037 quality standards and conservation interests as impacted by the project in its entirety.
ERVIN, J., concurs.
ZEHMER, J., dissents with written opinion.

. The notice of intent states that:
The proposed roofed platform and walkway will be located over seagrasses. The resultant shading is expected to destroy those seagrass-es which, as a base of a detrital food web, contribute to the commercial and recreational shellfish and fishing industry. Seagrasses also provide habitat and nursery grounds for many marine organisms, consolidate sediments and can improve water quality by removing nutrients from the water and reducing turbidity.
*1034 As a result of the above cited factors, degradation of water quality is expected. Specific State water standards ... that would be affected ... include the following:

Biological integrity ....

Transparency....

Turbidity....

Nutrients....

Furthermore, your project will result in the following effects to such an extent as to be contrary to the public interest and the provisions of Chapter 253, F.S.:
The proposed activity would be expected to interfere with the conservation of fish and wildlife to such an extent as to be contrary to the public interest, and will result in the destruction of natural marine habitats, grass and marine life, and established marine soils suitable for producing plant growth of a type useful as a nursery or feeding grounds for marine life.

. The final order states that:
The second application is for the same walkway in exactly the same location as was proposed in the first application. The platform, while in a slightly different location and configuration, overlaps the original platform in some areas.... [According to the permit drawings, the platform is still less than two feet from being directly over the grassbeds referenced in the first notice. Petitioners, although having moved the proposed platform from directly over the grassbeds, have not shown how the modification would eliminates [sic] significant shading of the grassbeds. In addition, the first notice listed four water quality criteria which would be violated by the project_ [T]he modification is not significant, and the circumstances are otherwise unchanged. Therefore, the doctrine of res judicata is applicable to this application.

. Appellants argue that they were misled by a DER field representative, and did not initially request a hearing due to a mistaken belief that no final order would be entered upon their initial permit application. However, any issue with regard to this contention should have been pursued by a direct challenge to the final order which was entered upon appellant’s initial permit application.

. At oral argument before this court, counsel for DER conceded that the determination as to the applicability of the doctrine of res judicata may, to a limited extent, involve a "question of fact." Counsel then stated that:
I would not be able to say that the course of administrative law would be totally disrupted in granting a hearing as to the sole question of whether or not significant substantial changes have been made to the application. I would have to admit that.
However, counsel further maintained that:
The stumbling block that I see, that I have not been able to reconcile, is the fact that the first application did deny a major portion of the project which was not changed in any manner at all and there were no changes in the conditions of the site, the site existed the same in the second application as it did in the first. The method of construction, the size, everything was the same, and that's the portion that I have a hard time reconciling.... I believe that the order does say that the first application, the walkway and the gazebo, are expected to impact productive seagrass beds leading to, I believe there were four, water quality, potential water quality, violations.
Appellants have not challenged or sought to supplement the record on appeal (on which the order on appeal was based) since it was filed here, their request instead being for "development of a record” by additional formal eviden-tiary hearing under section 120.57. We find no record deficiency affecting the dispositive issues as to substantial identity of the two proposals with respect to the stated interference with "natural marine habitats ... and established marine soils" spelled out in the original notice of intent. The proposals were based on the following graphic representations, dated June 29, 1983, and January 16, 1984, which accompanied the permit applications: